And move to the other appeal in number 18-3307, House v. Akorn, and here we do begin with Mr. Frank. Thank you, Your Honor. Ted Frank for the appellate in 18-3307. And may it please the Court, we are in the same position as the shareholder in Young v. Higbee. And we move to intervene to enforce the same sort of rights and cause of action that Young v. Higbee recognized and that this Court recognized when it endorsed Young v. Higbee in a number of opinions. So Mr. Frank, could you begin by explaining to me, I know you briefed this here and there and I've tried to follow it, but how your interest as a shareholder of Akorn is somehow distinctive enough that we don't run into the derivative suit problem. You're here as a helpful person trying to protect Akorn's treasury and probably down the line that would help all shareholders, including yourself. But it's really Akorn's problem and they decided to settle these attorney's fees. Well, but that wasn't our cause of action. Our cause of action wasn't for waste. It was for the breach of fiduciary duty and the unjust in it. But who owed you a fiduciary duty and what triggered it? As soon as you file a class action? As soon as you file a class action, you have a fiduciary duty to the class members you purport to represent. But the class members, so the fiduciary duty is to the class of Akorn shareholders who were saying that Akorn wasn't getting enough money for its shares or whatever. It was not aggressively enough defending the shareholder's position. Well, it was the Young v. Hiddey problem where they used the leverage of the class divide to self-deal and become unjustly enriched. And it was the unjust enrichment that constitutes the injury to the class members. So how was Akorn hurt? Or how are you as a shareholder hurt by this? I mean, we have a lot of cases today where you have standing issues. Where's your injury in fact from all of this? And under Illinois law, there's a breach of fiduciary duty here that the injury is the unjust enrichment. To you? Or to somebody else? To everybody who's a fiduciary. And as Justice Thomas said in Spokio, many traditional remedies for private right causes of action, such as for unjust enrichment, are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal rights. But I don't understand unjust enrichment cases to be an exception to Article 3 in federal court. If somebody hasn't somehow suffered while the other side is unjustly enriched, then why aren't they just sort of a concerned bystander? Well, again, it is the gain to the agent from the abuse of the relationship that triggers the right to recover rather than loss to the principal. And that's Martin v. Heinel's that we cite on page 10 of our reply brief. And that's an Illinois Supreme Court case. There is a right to recover created by the abuse of the relationship. Well, in the usual situation, you cite a bunch of cases from the laws of trusts, for example, where there's a well-established relationship among the settlor of a trust, the trustee, the beneficiaries of a trust, and if the trustee is behaving in an unfaithful way, then the beneficiaries are harmed. And so that seems to fit pretty readily into a normal injury-in-fact scenario. Illinois isn't required to follow the same rules as the federal courts do, and it may take a more generous view of injury. I mean, it seems to me your main point is that this racket, as you call it, where somebody files, asks for disclosures, the disclosures happen, they settle the attorney's fees on the side, so to speak, without going through the court because there's no certified class, is something that ought to be stopped, and maybe it should be stopped. But the question that comes up in this case is whether the entity that should stop it is Congress, is the Rules Committee, is this court. Other questions are why didn't the district court say a word about a sanctions analysis in its order? Instead, it just went to the merits. There are many things, it seems to me, it could have discussed if it was protecting the integrity of the court system and using its inherent power in that respect. There are a lot of holes in this case. Your Honor, we're relying on Young v. Higbee, which this court has repeatedly stated applies to the class action concept. If the breach of beneficiary duty and unjust enrichment at the expense to class members, because again, this case had settlement value and was extracted entirely for the benefit of the sole shareholder and his attorneys. So you're saying the case did have settlement value? Did I just hear you say that? Well, it did. They paid $320,000 to get out from it. But you're not saying that the case had any merit? No, I believe it was a meritless case. That's the MO of these particular attorneys. Right. But as this court has held, you can settle meritless cases. You just can't keep the entire windfall for yourself. It has to be proportionally shared with your punitive class client. So do you think the district court here did or did not impose sanctions on the plaintiffs? I think it exercised its inherent authority and so I think that works out to being a sanction. So I just feel like there's some inconsistency in your position. You're kind of saying they didn't impose sanctions, they should have, and now here we're looking at this and you're saying, well, actually the disgorgement of the fees was a sanction, but we don't have a sanctions analysis. No one's talking about even the inherent power of the court to sanction in the order of the court that's before us. Do you think it's permissible at all when there's an attorney's fee statute for people to resolve the question of fees by agreement? Well, but there isn't an attorney's fee statute here. This was a separate claim for a mootness fee that didn't even adhere to the Delaware legal requirements of notification for shareholders. So you don't agree with Judge Easterbrook then that the Securities Act has a relevance? No, I absolutely agree that this was improper under the Securities Act and plaintiffs try to get around it by plaintiffs try to get around it by asserting that they're doing this under Delaware law. But as we argue, they did not comply with Delaware law either. They argue that there are aspects of the Trulia decision that they followed faithfully, that they in fact did follow Delaware law. No, that's incorrect. And we discussed this in our brief when we talked about the allied artists case. The disclosure is not just that it must be helpful to shareholders, but it must be causally connected to the lawsuit that was meritorious when filed. And it has to be with notice to the shareholders. And in what way did the shareholders not have notice here? They did not have notice. There was no notice given to the shareholders. We knew about it because we were following the litigation waiting for the settlement to happen. But there is no notice to the shareholders. By notice you mean pre-resolution notice. Is that what you mean? Correct. Okay. I mean really it's quite different for a state court, such as the courts of Delaware, the Delaware Court of Chancery, to make up rules for itself and for one to say those rules are automatically part of the menu of rules that a federal court follows. I'm sorry. I don't understand the question. Well, you seem to be saying that there was a problem in this case because the parties were not following every last twist and turn of the Trulia case that the Delaware courts have adopted for themselves. And I'm suggesting that that's certainly their prerogative in Delaware to do that. But I don't think the fact that it's not quite Trulia tells us very much about whether the procedures followed here were compatible with federal law. Well, I agree that Delaware doesn't control it. It's the federal law that controls. We're just responding to the plaintiff's alternative arguments that what they did was permissible under Delaware. And you're saying that because certain aspects of Delaware law, such as the notice aspect, were not followed here, that that's a reason to support what the district court did? No, Your Honor. I'm saying that their argument that they follow Trulia is simply incorrect. I wonder if you could talk for a minute before we're finished about permissive intervention. I know you're in your rebuttal time, but I will be careful about that. Well, I will stand on our briefs on that. I'm not sure what the underlying question is. Well, the court addressed intervention in general globally. The court didn't break it down into, now I'm going to talk about 24A, now I'm going to talk about 24B. It just had a generic discussion of intervention. There was some talk in the briefs about whether that's good enough. Correct, Your Honor. We take the position that the court should have addressed our right to analyze our request to intervene permissively, that permissive intervention was appropriate, and that because permissive intervention does not require the intervener to have a direct personal or pecuniary interest, the Article III problem is largely avoided. Okay. Well, why don't we stop here, and we will hear from you again after we hear from Mr. Geiser. Thank you, Your Honor. Thank you, Your Honor, and may it please the court. We submit that there are many defects in my friend Mr. Frank's request to intervene, but there are a few straightforward ways, I think, to resolve this part of the appeal and to affirm. The first is the one that Chief Judge Wood pointed out, which is at its irreducible core, Mr. Frank's interest in this case is a derivative interest. His ultimate complaint is that funds were taken from the ACORN Treasury, and he'd like those funds to be returned to the ACORN Treasury. That is, in fact, a derivative complaint. If Mr. Frank believes that the ACORN defendant should not have settled out of court and resolved the fee issue without any judicial intervention, he always can take advantage of a suit for corporate waste under state law, but the answer is not that individual shareholders have a cognizable interest, either as a matter of Article III standing, but certainly not as a matter of prudential standing to get involved in the litigation directly as a party. My friend Mr. Frank's counsel, I'm puzzled by this line of argument. As I understand Frank's position, it's not that the directors breached their fiduciary duties by agreeing to pay out too much. It's that the plaintiffs and their lawyers breached their fiduciary duties to the class by using the class litigation to induce the payment. If the plaintiffs file a lawsuit and say implicitly, it will cost you $2 million to defend, so pay us a million and we'll go away. It's not a breach of fiduciary duties by the directors to pay the million. That actually saves the corporation money, but it's easily understandable as a claim of breach of fiduciary duty by the people purporting to represent the class who are using leverage to enrich themselves rather than the class. So that leads me to wonder why one would want to recharacterize what's expressly characterized by Mr. Frank as a complaint about the plaintiff's breach of fiduciary duty as if it were a complaint about the director's breach of fiduciary duty. Well, Your Honor, we were trying to respond first to the way that Mr. Frank had characterized his intervention request below. But what I was getting to, the second I agree, we also have to show how he does not have an interest as a class member. And I think that that follows for multiple reasons, including the very easiest, which is that Mr. Frank acquired his shares after the record date. That means that he was not a voting shareholder for ACORN. He says that's not how you describe the class, though, that in your complaint you didn't worry about the record date. Well, Your Honor, but for a very good reason. The complaint was filed before the record date was known. But if you look at the description of the class and the claims it issued, these are Section 14A claims under the Exchange Act. They apply only for voting shareholders. There's no such thing as a Section 14A claim for someone who's not a voting shareholder. So if you read the complaint in total, which I would encourage the panel to do, it's clear that the class of shareholders is limited to those voting shareholders, which excludes Mr. Frank. And that is the easiest way to resolve this. If there are any duties to absent class members pre-certification, which itself I think is an open question, and we would say that there are not formalized fiduciary duties in that context before the magic of certification occurs, they are limited to the voting shareholder class. But there are cases that indicate, although there are not a lot of duties for vis-a-vis putative class council and members of an uncertified class, there are some. And so I wonder to what extent is it important that at least in this case when the case was dismissed it was entirely without prejudice to anyone involved, the unnamed members, the named members, ACORN, anybody else, versus with prejudice. One would have to ask what was the That's exactly right, Your Honor. And we think that is why there's no conceivable breach here. If there is a fiduciary duty to unnamed class members, it's not a general fiduciary duty. It's limited to protecting the legal rights that form the basis of the relevant claims. And in this case, there's no conceivable impairment of those claims. There's no prejudice to any Section 14A rights by any member of the class or anyone who's not a member of the class, not even to the plaintiffs themselves, because all of the claims were dismissed without prejudice. So to the extent that there's even a conceivable fiduciary duty in this case, it wouldn't apply in this case because there's no conceivable breach. And again, to go back to, I believe it was Judge Easterbrook's question, this is not a situation where the lawyers are leveraging the class action device for a very simple reason, which is that the putative class action was withdrawn. The claims were dismissed. By the time they asked for fees and negotiated a private contractual agreement, again, out of court, there was no class action that still remained. So it's hard to understand how Mr. Frank's claim was used as leverage when Mr. Frank's claim no longer existed, even assuming he was a member of the voting class, which he's not, and I believe he concedes that, and even assuming their fiduciary duties pre-certification, which is an open question, and even assuming that those duties would extend beyond protecting the specific rights in the claims that are asserted by the information on behalf of the shareholder class. So I think, again, the easiest way to resolve this is to simply say that Mr. Frank, while acting possibly in the best of intentions, has no cognizable interest that would warrant intervention. A second reason that the intervention request would fail is that the court had no jurisdiction to consider it because these actions were no longer pending when he sought to intervene in them. And I believe Mr. Frank has not cited a single case, I believe even from any court, that says that a party can seek to intervene in a fully dismissed action where there isn't some pre-existing judicial order or judgment that that party is seeking to alter. And the only exception there, potentially, is in the context of putative class actions where the putative class member is trying to intervene in order to assert the class's rights that were implicitly denied by the court. That's the Devlin. And even that has divided... Devlin against Scardelletti. Yeah, that is the Devlin. That's correct, Your Honor, and we believe that that situation is distinguishable, I think, for fairly obvious reasons, as is Young v. Higbee, which Mr. Frank, although citing only, I believe, once in his opening brief, relies on heavily in reply. Young v. Higbee was an old case under the Bankruptcy Act. It pre-existed the Bankruptcy Code. The court looked at the claims in that case that were appealed that the relevant shareholders there were effectively representing the shareholder class. And what they did, it would be more akin to there being a certified class where the lawyers get up on appeal and they give away the class's rights in exchange for a private benefit. Now, we fully agree that if a class member in a certified class bargains away the class's rights for their own private benefit, that is a materially different situation that raises a whole host of legitimate concerns. That is quite distinguishable from a situation here where you have a putative class action filed. It is withdrawn under Rule 41. It's without prejudice to anyone's claims. And then a class member tries to intervene after jurisdiction has lapsed in the district court. So we again think that that alone, either defect is sufficient, I think, to resolve this. But if the panel wanted to look at yet another reason, I think an easy one is that Mr. Frank's interests aren't conceivably impaired by the denial of intervention. Nothing prevents Mr. Frank from suing either the ACORN board if he does believe this was corporate waste or from bringing his fiduciary duty claim, which again I think will fail for lots of reasons, including he wasn't part of the class that he says the council owed fiduciary duties to. So, Mr. Geiser, can I ask you, though, I want to go back to the intervention point more directly. Reading the district court's order denying Mr. Frank's motion to intervene, it's very hard to find language that seems to apply to permissive intervention. The discussion is almost entirely in terms of the criteria that govern 24A2 intervention, that is to say an interest that's the same and so on. So I know that sometimes judges don't pick it apart, but you need to find something in the order to suggest that the judge considered and rejected the possibility of permissive intervention. I'm having trouble finding that. Your Honor, I don't think the judge was as explicit as the judge could have been, but if you look at page 56 of our answering brief, we cite authority from this court that explains that the district court is not required to break out the separate lines of analysis. I get that. You don't have to, but at least the topics covered by permissive intervention are somewhat different from the topics covered by intervention of right. And I'm putting to one side intervention guaranteed by statute. I'm really talking about the common interest type, but the standards are different. Now, there is also an item in permissive intervention, B3, that talks about undue delay and prejudice, and I think the judge may have touched on that a little bit, but the judge really doesn't give me much assurance that he was even aware that the standards are somewhat different for permissive than for of right. I think that may have been a product by the lack of briefing on the issue, including by Mr. Frank. But I do think, though, that if you look to the court's opinion, it addresses what the court would have thought of a robust request for permissive intervention. I explained how Mr. Frank didn't have any conceivable interest in the outcome of the case. It understood Mr. Frank's request as effectively wanting money back into the ACORN coffers, which, again, is a derivative claim. It explained how Mr. Frank could assert, and I hope I'm not wrong on this, but I think the court did say at one point that he could assert those claims separately, and he did intervene after the action had already lapsed, and the judge expressed concern that he even would have the power to look at this at this late time. And I think that even if the court had ruled on it, I think it would be a clear abuse of discretion to grant permissive intervention in this posture, where you have a non-class member in an uncertified class in a case that's been withdrawn, seeking to assert very aggressive, possibly putting it charitably, claims against not just the plaintiffs but a different party, the Plaintiffs' Council, in a fully resolved case. So could I ask you this? It sounds to me almost as if you're basing your argument on the measure of damages that Mr. Frank is seeking. He'd like the ACORN treasury to be reimbursed, and that's not necessarily the same damage as he suffers as a shareholder from the plaintiff, from the use of the class action device here to impoverish the corporation, so to speak. So would there be some other measure of damages that would be more clearly aligned with the type of breach of fiduciary duty he's asserting? I don't believe so, Your Honor. And first, the damages he did seek expressly was to reimburse the ACORN treasury, which again is why it's really a derivative interest. And so I think it's very hard for him to get around that. And just to take issue again with the premise, it would be one thing, again, if he at least fit within the actual class. If this case had continued to full litigation and a motion to certify the class, Mr. Frank would have fallen outside the class. His interests were not represented because, again, he has no conceivable viable claim under Section 14a, which were the claims that were asserted in this action and the only claims that were brought. And his rights weren't conceivably prejudiced by any action taken by the plaintiffs or their lawyers. So I think, again, those are fully sufficient ways to resolve this. Now, I don't want to try to make Mr. Frank's creative argument for him and try to come up with a different measure of relief. But, again, it's very hard to say how the class action device was leveraged in a case where the class action was fully withdrawn and dismissed, which, again, just to go back to one point, we think the court was correct in denying intervention. Its reasoning was very sound. But one mistake the court did make in the course of its order is suggesting that these are fees that are extracted from defendants in order to avoid any interference with the proposed merger. It's very hard to understand how a withdrawn suit that has been mooted, it doesn't exist, it's not pending before any court, could conceivably interfere with anything. If the defendants thought that the request for fees was frivolous, all they had to do is say, we will not settle with you. The burden is on the plaintiffs to go to the court and file the fee motion. They're the ones that have to do that work. The defendants can sit back on their hands and say, we leave it to the court to recognize that the claim is frivolous and it's not entitled to fees. And my co-counsel and my clients consistently take the position that the benefit that they should be awarded for fees should be absolutely commensurate with the benefit conferred on the class. So if a judge looks at this, I'm sorry? Your time has now expired, so I think we've probably got your point. So we will thank you and give Mr. Frank, I guess, his 2 minutes and 10 seconds of rebuttal time. Thank you, Your Honor. Thank you. Thank you, Your Honor. First of all, again, they defined the class as all shareholders, and it wasn't because they were restricting it to Exchange Act. One of the allegations they make was that shareholders were insufficiently compensated by the merger compensation. And that's at A44, which we cite in our brief at page 7 of our reply brief. Second, the idea that I can go after ACORN directors for waste is just a weird artifact that this particular merger fell through. If Fresenius hadn't backed out of the merger, then Fresenius would absorb ACORN, there would be no ACORN directors, and I would have no cause of action against Fresenius. But, again, the claim isn't for waste, it's a claim for breach of fiduciary duty. So what's the measure of your damages for that breach of fiduciary duty, in the sense that it really sounds like it's not the class members that you think breached it, it's more class counsel? Yes, class counsel did. So what's the measure of damages to you? And the class representatives. It's the unjust enrichment to themselves, and I think punitive damages would be appropriate. Okay. Anything further? I'm happy to answer any other questions the court has. Judge Keeney? Aye. All right. Thank you very much, then. Thanks to both counsel, thanks to Mr. Frank, thanks to Mr. Geiser. We will take this case under advisement.